# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

JASMINE MORGAN,

        Plaintiff,         Case No.

v.         Judge
        Magistrate Judge

WARBY PARKER, INC.,

        JURY DEMAND

        Defendant.

_____/

Defendant Warby Parker, Inc. ("Warby Parker") violated the ADAAA when it refused Plaintiff Jasmine Morgan's ("Ms. Morgan") accommodation requests concerning non-essential functions of her job. Further, Warby Parker violated the ADAAA when it retaliated against Ms. Morgan for requesting accommodations and making a complaint of disability discrimination culminating in her termination. Thus, Ms. Morgan brings claims of discrimination and retaliation under the Americans with Disabilities Act, as amended, the Tennessee Disability Act, and Tennessee common law.

## PARTIES

1. Plaintiff, Jasmine Morgan, ("Plaintiff" or "Ms. Morgan") is a citizen and resident of Nashville, Davidson County, Tennessee, and a former employee of Defendant.

2. Defendant, Warby Parker Inc., ("Warby Parker") is a Delaware Corporation licensed to transact business in Tennessee. Its registered agent for service of process is Corporation Service Company, 2908 Poston Ave, Nashville, TN, 372023-1312.

3. At all relevant times, Warby Parker employed Plaintiff. At all material times, Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

1

4. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(2).

5. At all material times, Defendant has been an employer as defined by the Tennessee Disabilities Act, T.C.A. § 8-50-103.

## JURISDICTION AND VENUE

6. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et seq.* ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Counts I - II) and the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Counts III and IV).

7. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

8. Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et seq.*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

## FACTS

9. Plaintiff, Jasmine Morgan, was hired by Warby Parker as a part-time Customer Experience Advisor on April 5, 2021. In this position, Ms. Morgan worked remotely.

10. Ms. Morgan is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(2). Ms. Morgan has mental health disabilities including ADHD and Complex PTSD that require medication and ongoing treatment. These disabilities affect her nervous system and the major life activities of working and sleeping, among others.

2

Case 3:23-cv-01194    Document 1    Filed 11/13/23    Page 2 of 13 PageID #: 2

11. As a result of her disability, Ms. Morgan must control her environment to prevent distractions to perform her duties; this includes but is not limited to regulating temperature, sound, smell, and perceived physical safety. Ms. Morgan also requires freedom with her manner of dress, private access to restrooms, and access to certain types of foods, in order to manage her disability.

12. Throughout her employment with Warby Parker that she did not, nor was she able to work full days in an office or work a hybrid schedule.

13. In January 2022, Ms. Morgan applied for the full-time Support Lead position.

14. During her interview for this position, Ms. Morgan informed the interviewer that she would need to continue working remotely full-time, but if necessary, she could perform a "hybrid schedule" limited to coming into the office for weekly or bi-weekly team meetings or for essential company-wide meetings. At this time, she did not disclose the reason for her request.

15. Ms. Morgan also notified the interviewer that if Warby Parker were to return to requiring full days in the office, she would need to withdraw from consideration for this position.

16. The interviewer informed her this would not be an issue.

17. In February 2022, Ms. Morgan was promoted to Support Lead and performed this position fully remote.

18. In this position, all of Ms. Morgan's communications with clients and other support staff are performed online and on a computer. There are no in-person interactions required to complete these job duties.

19. Starting in March 2022, employees were notified of a phased return to office plan, culminating in all employees returning to the office by June 7, 2022, with a hybrid schedule

3

of three days in office and two days working remotely.

20. Ms. Morgan communicated to her direct supervisor that due to her disability, she needed a consistent schedule and the ability to work from home full-time. She provided a proposed schedule to her supervisor. Her supervisor informed her that she would need to go through the accommodation request process for a fully remote schedule, but stated that the proposed schedule was fine with her and would go into effect if and when the accommodation was approved.

21. On April 2, 2022, per Warby Parker policy, Ms. Morgan filed an accommodation request with Warby Parker's third-party provider, Unum, requesting that her role remain fully remote, due to her disability.

22. Several days later, Warby Parker contacted Ms. Morgan regarding details of her accommodation request.

23. Approximately two weeks later, Ms. Morgan responded stating that she was not expecting to work directly with Warby Parker's Human Resources ("HR") and that it was taking some time for her Unum representative to be reached and the process for accommodation approval to be clarified.

24. Per policy, communications regarding accommodations requests are to be managed by Unum, and communication between Warby Parker and Unum is integral to this process.

25. At Warby Parker, the area in which Ms. Morgan would be required to work is an open concept floor plan, with no separate offices, where Ms. Morgan would be surrounded by other people while she worked.

26. This type of environment would prevent her from being able to work effectively

and perform her job duties due to her disabilities.

27. On April 14, 2022, Ms. Morgan received an email from Monique Mathis, HR Business Partner, approving her accommodation request, stating the accommodations to work from home and the need for a consistent schedule was appropriate based on the impacts of Ms. Morgan's disability. This email requested additional information regarding Ms. Morgan's request for a consistent schedule.

28. Ms. Mathis misspelled Ms. Morgan's name and Ms. Morgan did not receive this email until Marilu Utrera, an HR Representative, sent it to Ms. Morgan on April 25, 2022.

29. This same day, Ms. Morgan responded with details regarding the requested consistent schedule, which had already been reviewed and approved by her supervisor, pending the accommodation being granted.

30. After no response, Ms. Morgan reached out again to Ms. Utrera to follow up on the requested consistent schedule.

31. However, on May 3, 2022, Ms. Utrera emailed Ms. Morgan revoking Ms. Morgan's accommodation approval and denying her request for accommodation, stating that it is an essential function of her position to work the hybrid schedule.

32. On May 6, 2022, employees were informed via email that Phase I of the return to in-office work was going well and there were "fun activities" in the work place each week and "a buzz in the office." Employees were also notified that Warby Parker would begin welcoming back Phase II employees, but that this phase "does NOT include part time employees and individuals who have been approved fully remote."

33. On May 8, 2022, Ms. Morgan responded to Ms. Utrera informing her that Ms. Mathis had already approved her work from home accommodation request and that Unum had

informed her that Unum had still not received any communication from Warby Parker.

34. The next day, Ms. Mathis emailed Ms. Morgan stating that she copied the approval information Unum, that Unum suggested that these accommodations be approved, but that Warby Parker would not approve Ms. Morgan's accommodation requests.

35. Warby Parker violated its own policy when it did not communicate with Unum regarding Ms. Morgan's accommodation request and attempted to communicate with Ms. Morgan directly to deny her request for accommodation.

36. On May 13, 2022, Ms. Utrera indicated that Warby Parker was "only" requesting that Ms. Morgan work in the office three days per week, but they could consider other roles Ms. Morgan could fill that were fully remote.

37. On May 17, 2022, Ms. Morgan explained to Human Resources that her disability "does not take days off" and she lives with her disabilities every day so she would not be able to be in the office three of the five workdays.

38. Ms. Morgan also stated that Ms. Utrera's communications were "ableist" and that the ADA accommodation process was to amend the arrangement of one's current position and a demotion was not an accommodation, but she would consider other roles if they were equal to or above her current role.

39. At this time, Ms. Morgan's required return to work date was June 7, 2022.

40. Ms. Morgan repeatedly asked Warby Parker to provide which essential functions of her position required that she work in the office. Ms. Morgan never received a response to this inquiry.

41. On June 29, 2022, Ms. Utrera emailed Ms. Morgan stating that because Ms. Morgan did not provide alternative options from her initial accommodation request and refused

to communicate with HR, the interactive process had concluded.

42. In this same email, Ms. Utrera would only state that it was an essential function of Ms. Morgan's job that she works the proposed hybrid schedule, but that Warby Parker would allow Ms. Morgan to use Warby Parker's "work from anywhere perk" from June 22 until July 18, 2022.

43. However, Ms. Morgan repeatedly attempted to communicate with HR via email, only for HR to request Zoom meetings.

44. Ms. Morgan specifically requested all communication regarding her requests rbe completed in writing and in email.

45. Accordingly, Warby Parker informed Ms. Morgan she was expected in the office by the week of July 18, 2022.

46. Ms. Morgan continued to request clarification of which job duties were determined to be essential and required her to be in the office so that she could provide alternative accommodations options.

47. Ms. Morgan also requested that a copy of her job description be provided so that she may be able to review the essential functions in order to have an interactive conversation regarding possible accommodations. Warby Parker never provided this information.

48. On July 20, 2022, Ms. Morgan contacted her manager to request a transfer to the position of Customer Experience Advisor III, a position which retained the option of being fully remote.

49. This was a one-step demotion.

50. On this same day, Ms. Morgan was informed by Lauren Guisinger, Associate Manager, that support teams were not eligible for transfer.

51. The next day Ms. Morgan emailed back that Ms. Utrera had stated that a transfer to a "remote eligible role" was a possible accommodation.

52. Ms. Guisinger responded that she would contact Ms. Utrera, but regardless, a transfer would not be available by July 25, 2022.

53. This same day, Ms. Guisinger emailed Ms. Morgan that due to transfers running quarterly, this process was closed.

54. Two hours later, Ms. Morgan reminded Ms. Guisinger and Ms. Utrera that transfers to this position level were being offered to others who could not return to the office due to circumstances unrelated to disabilities.

55. Warby Parker never informed Ms. Morgan that there were any deadlines for being transferred to a lower position.

56. On July 28, 2022, Ms. Utrera reiterated that Warby Parker's transfer process was on a quarterly basis and that as a part of the interactive process they had proposed a change from Ms. Morgan's current role and given their best efforts to find a reasonable solution.

57. However, the position Warby Parker had offered Ms. Morgan and again offered Ms. Morgan was a three-step demotion to Customer Experience Advisor I and included a substantial pay cut.

58. Within a few hours, Ms. Morgan requested to work with Ms. Utrera's supervisor as Ms. Utrera was not upholding Warby Parker's "stated commitment to inclusivity."

59. Ms. Morgan also reiterated that her request regarding which job duties were essential to her position were never provided, making it impossible for her to engage in an interactive process and that she was informed by Unum that Unum needed to be receiving any accommodation negotiation communication, which Warby Parker was not providing.

60. Despite only receiving positive performance reviews, on August 16, 2022, Warby Parker terminated Ms. Morgan for failing to come into work.

61. Ms. Morgan was still performing all her job duties remotely.

**Count I**
**Violation of ADA/ADAAA- Disability**
**Discrimination and Failure to Accommodate**

62. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

63. Pursuant to the ADAAA, an individual is considered to have a disability if she has a mental disorder that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

64. Plaintiff was a qualified individual with a disability as she had multiple mental health disorders that affected her nervous system and were an impairment that substantially limited her in one or more major life activities.

65. Plaintiff was discriminated against on the basis of her disability and terminated because of her disability and/or Defendant's failure to accommodate her disability.

66. Plaintiff could perform the essential functions of her job with an accommodation of working from home and a consistent schedule.

67. Plaintiff was terminated due to her disability, her engagement in protected activity, and her requests for a reasonable accommodation.

68. Defendant's Human Resources failed to follow Defendant's own policies related to requests for accommodation when it would not communicate with the third-party provider. Defendant refused to communicate with Plaintiff in writing regarding her accommodations requests and information pertaining to the essential functions of her position so that she could participate in an interactive process. Instead, Defendant offered Plaintiff a significant demotion

and ignored that Plaintiff's job duties did not require that she work in office.

69. Plaintiff requested a reasonable accommodation and Defendant failed to engage in a meaningful interactive process with her, then blamed Plaintiff for the breakdown of the process and ultimately terminated her.

70. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

71. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
## Violation of ADAAA- Retaliation

72. Plaintiff restates and incorporates herein the foregoing paragraphs.

73. It is federal public policy and law under the Americans with Disabilities Act that employees must be able to exercise their rights without fear of reprisal or penalty from an employer.

74. Plaintiff engaged in protected activity under the ADA when she requested an accommodation and complained of disability discrimination. Such actions by the Plaintiff are statutorily protected activities under ADAAA.

75. In violation of the ADAAA, Defendant retaliated against Plaintiff when it denied her accommodation requests and then terminated his employment.

76. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## Count III
### Violation of TDA- Disability Discrimination

77. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

78. Pursuant to the TDA, an individual is considered to have a disability if he or she has a physical or mental impairment that substantially limits one or more major life activities.

79. Plaintiff was a qualified individual with a disability.

80. Defendant discriminated against Plaintiff on the basis of her disability, in violation of the TDA, that culminated in her termination.

81. Plaintiff was discriminated against and eventually terminated because of her disability and her complaints of disability discrimination and retaliation.

82. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

83. As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count IV
### Violation of TDA- Retaliation

84. Plaintiff restates and incorporates herein the foregoing paragraphs.

85. It is the public policy and state law of Tennessee that employees must be able to exercise their rights under state law without fear of reprisal or penalty from an employer.

86. Plaintiff objected to disability discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under TDA.

87. In violation of the TDA, Defendant retaliated against Plaintiff by terminating her

employment in retaliation for exercising her rights under the TDA.

88. Defendant retaliated against Plaintiff because of her protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's protected activity, i.e. complaints of disability discrimination, Defendant took adverse employment actions against Plaintiff for a pretextual reason.

89. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits, insurance and reimbursement for medical costs due to the loss of her insurance;

3. Reinstatement and/or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Punitive damages;

6. Attorneys' fees and expenses;

7. Prejudgment interest and, if applicable, post-judgment interest; and

8. Such other and further legal or equitable relief to which she may be entitled under the ADAAA, the TDA, and any other statutory or common law.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins (BPR #026099)

Ashley Shoemaker Walter (BPR #037651)
HMC Civil Rights Law PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
Phone: (615) 724-1996
Fax: (615) 691-7019
heather@hmccivilrights.com
ashley@hmccivilrights.com